UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                              Plaintiff,<br>v.<br>ANTHONY DUANE BELL, SR. (1)<br>                              Defendant. | Case No.:  20cr2887-WQH<br><br>**ORDER** |

HAYES, Judge:

The following matters are before the Court: (a) "Motion to Open and Strike Order Dated May 28, 2024 Granting Motion for Payment of the Special Assessment and Fine with Bond Money" ("Motion to Open and Strike Order," ECF No. 266), filed by Defendant Anthony Dewayne Bell, Sr. ("Bell Sr." or "Defendant"); (b) "Motion to Release $15,000 Bond to Tamara Bell, Wife of Anthony D. Bell, Sr., Per Allowance of 28 U.S.C. § 2044" ("Motion to Release $15,000 Bond to Tamara Bell," ECF No. 270), filed by Bell Sr.; (c) "Motion to Clarify Restitution Order Regarding Joint and Several Liability" ("Motion to Clarify Restitution Order," ECF No. 272), filed by Plaintiff United States of America ("United States" or the "Government"); (d) "Motion to Object to Government's Request to Modify Restitution Order Regarding Joint and Several Liability" ("Motion to Object to Government's Request to Modify Restitution Order," ECF No. 280), filed by Bell Sr.; and (e) "Motion for Leave of Court to Respond to Government's Reply to Defendant's Motion to Open and Strike Order" (ECF No. 281), filed by Bell Sr.

# BACKGROUND

On September 18, 2020, Bell Sr. was charged in an indictment with conspiracy to commit health care fraud, pay unlawful remunerations, and make false statements, in violation of 18 U.S.C. § 371; health care fraud, in violation of 18 U.S.C. § 1347; payment of illegal remunerations, in violation of 42 U.S.C. § 1320a-7b(b)(2); and criminal forfeiture pursuant to 18 U.S.C. §§ 982(a)(7). (ECF No. 1.)

On September 25, 2020, United States Magistrate Judge William V. Gallo set a $100,000.00 appearance bond secured by the signature of Bell Sr.'s wife and a $15,000.00 cash deposit paid by the surety or family member. (ECF No. 11.) The same day, Bell Sr. was released from custody and ordered to submit his bond package within seven days. (ECF 5, 11.) On October 2, 2020, Bell Sr.'s bond was filed and a cashier's check in the amount of $15,000.00 was deposited with the Clerk of Court. (*See* ECF No. 14.) The $15,000.00 cashier's check lists the "remitter" as "Anthony Bell," and the Clerk's receipt identifies "Anthony Bell" as the payer of the check. (ECF No. 250-1 at 3; ECF No. 14 at 12.)

On June 27, 2023, Bell Sr. pled guilty to Count 3 of the Indictment charging health care fraud, in violation of 18 U.S.C. § 1347. (ECF Nos. 197, 198.)

On March 11, 2024, the Court sentenced Bell Sr. to the custody of the Bureau of Prisons for 65 months, followed by three years of supervised release. (ECF Nos. 232, 237.) As part of the sentence, the Court ordered Bell Sr. to pay $21,725,604.56 in restitution and a special assessment of $100.00. (ECF No. 237 at 1, 6.) The Amended Judgment states: "The restitution shall be joint and several with co-conspirators found liable for the same losses. Specifically, Ardalaan Adams, Charles Burruss, and Herbert Kimble for losses for billing submitted to Medicare by UMS 1 and UMS 2." *Id*. at 6.

On May 22, 2024, the Government filed a Motion for Payment of the Special Assessment and Restitution with Bond Money. (ECF No. 250.) The Government acknowledged that Bell Sr. had self-surrendered to serve his custodial sentence and requested that the Court exonerate the surety. The Government also requested that the

1 Court, pursuant to 28 U.S.C. § 2044, apply the bond deposit toward Bell Sr.'s judgment,
2 and pursuant to 18 U.S.C. § 3612(c), order that the funds be applied first to the special
3 assessment, and then applied to the restitution. The Government submitted evidence that
4 Bell Sr. controlled the Wells Fargo bank account from which the $15,000 bond money was
5 paid. (*See* ECF No. 150-1.)

6       On May 28, 2024, the Court issued an Order granting the Motion for Payment of the
7 Special Assessment and Restitution with Bond Money, and stating that, "[p]ursuant to 28
8 U.S.C. § 2044, the Clerk of Court shall apply the bond deposit of $15,000 toward
9 Defendant's judgment, in the order described in 18 U.S.C. § 3612(c)." (ECF No. 255 at 1.)

10       On June 25, 2024, Bell Sr., proceeding pro se, filed the pending Motion to Open and
11 Strike Order. (ECF No. 266.) Bell Sr. requests that the Court "vacate the May 28, 2024
12 Order," "deny the Government's Motion," "return the $15,000 deposit to Anthony D. Bell
13 or Tamara Bell," "and/or … [g]ive [Bell Sr.] adequate time to respond to the Government's
14 motion." *Id*. at 2.

15       On July 1, 2024 and August 14, 2024, the Court issued Orders granting Bell Sr.'s
16 request for time to respond to the United States' Motion for Payment of the Special
17 Assessment and Restitution with Bond Money. (ECF Nos. 267, 269.)

18       On September 12, 2024, Bell Sr. filed the pending Motion to Release $15,000 Bond
19 to Tamara Bell. (ECF No. 270.) Bell Sr. contends that his attorney advised Bell Sr. and
20 Bell Sr.'s wife, Tamara Bell, to pay the $15,000 bond from Bell Sr.'s business bank account
21 rather than the Bells' joint, personal bank account. Bell Sr. contends that Bell Sr. and his
22 wife "lived off" funds from Bell Sr.'s business account and "given 'community property'
23 laws in California, Tamara had equal legal claim to business assets as did her husband."
24 *Id*. at 9. Bell Sr. also contends that his wife "needs the [bond] money badly to make ends
25 meet." *Id*. at 14.

26       On September 20, 2024, the Government filed a response contending that the
27 $15,000 bond deposit should be applied to Bell Sr.'s restitution and special assessment
28 because: "(1) the Government is not limited to the payment schedule when enforcing the

judgment; (2) the judgment may be enforced against community property; (3) there is no hardship exception that applies to Defendant's case; and (4) the Government served its motion on Tamara Bell." (ECF No. 271 at 2–3.)

On September 20, 2024, the Government filed the pending Motion to Clarify Restitution Order, which "requests that the Court issue an order that [Charles] Burruss and [Ardalaan] Adams are not jointly and severally liable for the restitution owed by Defendant." (ECF No. 272 at 5.)

On October 15, 2024, Bell Sr. filed the Motion to Object to Government's Request to Modify Restitution Order. (ECF No. 280.) Bell Sr. contends that the Government's request to modify the restitution order is untimely and "could prejudice any future argument Bell may wish to make." *Id*. at 5.

On October 21, 2024, Bell Sr. filed the Motion for Leave of Court to Respond to Government's Reply to Defendant's Motion to Open and Strike Order.[1] (ECF No. 281.) Bell Sr. contends that the Government's claim for the $15,000 bond money is inconsistent with the payment schedule in the restitution order, service was not properly effectuated on Tamara Bell, the bond money is not traceable to Bell Sr.'s offense, and the Court should order the bond money to be given to Tamara Bell pursuant to the hardship provision in 28 U.S.C. § 2044.

I.   **Bond Money**

Under the Mandatory Victims Restitution Act of 1996 ("MVRA"), the Government is responsible for enforcing restitution orders and turning the funds collected over to victims. *See* 18 U.S.C. §§ 3664(m)(1)(A)(i), 3612(c)(2). "An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of [Title 18]; or by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(i) & (ii). "[T]he 1996 enactment of MVRA made

---

[1] Bell Sr.'s Motion for Leave of Court to Respond to Government's Reply to Defendant's Motion to Open and Strike Order is granted. (ECF No. 281.) The Court considers Bell Sr.'s arguments made therein.

criminal restitution orders enforceable against *all* of a defendant's property." *United States v. Novak*, 476 F.3d 1041, 1044–45 (9th Cir. 2007) (en banc). A fine or order of restitution "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). Special assessments are "collected in the manner that fines are collected in criminal cases." 18 U.S.C. § 3013(b).

In the Motion for Payment of the Special Assessment and Restitution with Bond Money (ECF No. 250), the Government requested that the Court, pursuant to 28 U.S.C. § 2044, apply the bond deposit toward Bell Sr.'s judgment, and pursuant to 18 U.S.C. § 3612(c), order that the funds be applied first to the special assessment, and then applied to the restitution. Section 3612(c) states that "[t]he Attorney General shall be responsible for collection of an unpaid fine or restitution" in judgments, and "[a]ny money received from a defendant shall be disbursed so that each of the following obligations is paid in full in the following sequence: (1) A penalty assessment under section 3013 of title 18, United States Code. (2) Restitution of all victims." Section 2044 states:

> On motion of the United States attorney, the court shall order any money belonging to and deposited by or on behalf of the defendant with the court for the purposes of a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and before sentencing except upon a showing that an assessment, fine, restitution or penalty cannot be imposed for the offense the defendant committed or that the defendant would suffer an undue hardship. This section shall not apply to any third party surety.

28 U.S.C. § 2044. "Section 2044 codifies the discretion courts have long exercised, to pay, on a proper motion, bond or bail money to the parties with a legally established superior claim to it." *United States v. Higgins*, 987 F.2d 543, 546 (8th Cir. 1993) (citing, *inter alia*, *United States v. Rubenstein*, 971 F.2d 288, 294 (9th Cir. 1992)).

|   |   |
|---|---|
| 1 | The Government submitted evidence that Bell Sr. controlled the Wells Fargo bank account from which the $15,000 bond money was paid. (*See* ECF No. 250-1.) Specifically, the $15,000 check issued by Wells Fargo Bank on September 29, 2020 that was deposited on the same day with the Clerk of Court to secure the bond lists the "remitter" as "Anthony Bell" and the Clerk's receipt identifies "Anthony Bell" as the payer of the check. *Id*. at 3, 5. The Government filed documents from Wells Fargo Bank showing that the account from which the $15,000 check was drawn was opened in 2018 with "Customer 1" listed as "Pharmafind Inc.," who was the "Sole Owner" of the account, and "Customer 2" listed as "Anthony Bell," who was the "Signer" of the account. *Id*. at 7–8. "Anthony Bell" with the same date of birth, social security number, and driver's license number as Bell Sr. was listed as the "Owner with Control of the Entity." *Id*. at 9; *see also* Presentence Investigation Report at 3, ECF No. 210. The addresses listed on the Wells Fargo account application for Pharmafind Inc. and "Anthony Bell" were the same. (ECF No. 250-1 at 8–9.)

Bell Sr. objects to the bond money being used to pay the special assessment and restitution, contending as follows: the money instead should be paid to Tamara Bell because the funds are community property; the Government's claim for the $15,000 bond money is inconsistent with the payment schedule in the restitution order; service was not properly effectuated on Tamara Bell; the bond money is not traceable to Bell Sr.'s offense; and the Court should order the bond money to be given to Tamara Bell pursuant to the hardship provision in 28 U.S.C. § 2044.

"Under the MVRA, the government may collect on a restitution judgment using the procedures available for the collection of criminal fines outlined in 18 U.S.C. § 3613(a), and 'may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law.'" *United States v. Berger*, 574 F.3d 1202, 1205 (9th Cir. 2009) (quoting 18 U.S.C. § 3613(a)). Section 3613(a) exempts certain categories of property from collection, but none of those |

categories are applicable here.[2] "Accordingly, under the MVRA, a restitution judgment may be enforced against all of [the defendant]'s assets, i.e., his 'property or rights to property.'" *Berger*, 574 F.3d at 1205 (quoting 18 U.S.C. § 3613(a)). The Court must "consider whether the [bond money] constitutes [Bell Sr.]'s 'property or rights to property' for the purposes of 'enforc[ing] ... a civil judgment under ... State law.'" *Id*. (quoting 18 U.S.C. § 3613(a), (c)). Here, the parties agree that California law applies. "Under California law, property acquired by either husband or wife during a marriage generally constitutes 'community property.'" *Id*. (quoting State *Bd. of Equalization v. Woo*, 82 Cal. App. 4th 481, 483 (2000) (citations omitted)).

"In the ordinary case, 'the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt.'" *Id*. (quoting Cal. Fam. Code § 910(a)). "Thus, even though [the defendant] is the only spouse who is a party to the judgment for the debt at issue here, under the MVRA and California law the [money]'s community property status makes [the defendant's spouse] liable for that debt." *Id*. (citing 18 U.S.C. §§ 3613, 3664(m); Cal. Fam. Code § 910(a)). Similarly, the bond money would be subject to the Government's collection efforts even in the bond money Bell Sr. paid constituted community property with his wife and the check had been written from the couple's joint bank account rather than Bell Sr.'s business account. Accordingly, the Court overrules Bell Sr.'s objection to the bond money being used to pay the special assessment and restitution because the funds are community property shared with his wife.

---

[2] Bell Sr. contends that 26 U.S.C. § 6334(a)(13) "may apply to Bell's case." (ECF No. 281 at 6.) However, § 6334(a) is only relevant because it is incorporated in 18 U.S.C. § 3613(a)(1), which states: "[A] judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that--(1) property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law...." Section 3613(a)(1) does not incorporate 26 U.S.C. § 6334(a)(13), and therefore it has no relevance to the pending motions.

    In Bell Sr.'s Plea Agreement, Bell Sr. acknowledged that "[a]ny payment schedule imposed by the Court establishes only a minimum obligation, and does not foreclose the United States from exercising all legal actions, remedies, and process available to collect the restitution judgment, including but not limited to remedies pursuant to 18 U.S.C. §§ 3613 and 3664(m)(1)(A)." (ECF 198-1 at 6.) The Amended Judgment includes a payment schedule for the restitution, but also states that "[t]hese payment schedules do not foreclose the United States from exercising all legal actions, remedies, and process available to it to collect the restitution judgment." (ECF No. 237 at 6.) Accordingly, the Court overrules Bell Sr.'s objection to the bond money being used to pay the special assessment and restitution because it is inconsistent with the payment schedule in the Amended Judgment.

    The Government filed evidence indicating that its motion was served via FedEx and U.S. Mail on Tamara Bell at the address listed on her driver's license and given by Bell Sr. to a Government paralegal. (*See* ECF No. 271 at 9; ECF No. 277 at 5, 9–10.) Moreover, Tamara Bell submitted an affidavit in support of Bell Sr.'s pending Motion to Release $15,000 Bond to Tamara Bell (*see* ECF No. 270 at 19–23.) Accordingly, it is clear that Tamara Bell received actual notice of the Government's motion and the Court therefore overrules Bell Sr.'s objection to the bond money being used to pay the special assessment and restitution because service was not properly effectuated on Tamara Bell.

    Bell Sr. has not pointed to any authority that the assets used to pay a restitution judgment must be "traceable to Defendant's offense." (ECF No. 281 at 17.) As discussed above, "under the MVRA, a restitution judgment may be enforced against all of [defendant]'s assets, i.e., his property or rights to property." *Berger*, 574 F.3d at 1205 (quotation omitted). Accordingly, the Court overrules Bell Sr.'s objection to the bond money being used to pay the special assessment and restitution because the Government has not shown that the money is traceable to his offense.

    Finally, Bell Sr. references the "hardship" language in 28 U.S.C. § 2044. This language states: "The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and *before sentencing* except

upon a showing … that the defendant would suffer an undue hardship." 28 U.S.C. § 2044 (emphasis added). The italicized language of § 2044 "suggests that, after sentencing, the district court ha[s] no discretion to release money for [the defendant's wife]'s benefit on ground of hardship." *United States v. Tresch*, 626 F. App'x 638, 639 (7th Cir. 2015). Even if the Court had discretion, after sentencing, to determine whether "the defendant would suffer an undue hardship" if the bond money were to be applied to the payment of Bell Sr.'s assessment and restitution, the Court would find that the record would not support such a finding. Tamara Bell submits an affidavit indicating that her monthly expenses exceed her monthly income and asserting that she was left "financially destitute" when the Government seized the house owned by the Bells "worth approximately $3.8 million." (ECF No. 270 at 19–20.) However, her affidavit also states that the Bells "own[] a second home, the one in which I currently reside." *Id*. at 20. There is no evidence in the record of Tamara Bell's equity in her "second home" or the value of any other assets she owns. Accordingly, even if the Court had the discretion to apply § 2044's hardship exception after Bell Sr.'s sentencing, the Court would find that the record does not support such a finding and therefore Bell Sr.'s objection on this basis is overruled.

For the above reasons, the Court denies Bell Sr.'s Motion to Open and Strike Order (ECF No. 266) and Motion to Release $15,000 Bond to Tamara Bell (ECF No. 270).

## II. Motion to Clarify Restitution Order

In the Motion to Clarify Restitution Order, the Government "requests that the Court issue an order that [Charles] Burruss and [Ardalaan] Adams are not jointly and severally liable for the restitution owed by Defendant." (ECF No. 272 at 5.)

The Amended Judgment, which was filed on April 12, 2024, states that Bell Sr. is to "[p]ay restitution in the amount of $21,725,604.56" to Center for Medicare Services ("CMS"). (ECF No. 237 at 6.) The Amended Judgment further states: "The restitution shall be joint and several with co-conspirators found liable for the same losses. Specifically, Ardalaan Adams, Charles Burruss, and Herbert Kimble for losses for billing submitted to Medicare by UMS 1 and UMS 2." *Id*. In the Motion to Clarify Restitution Order, the

Government states that, when Adams and Burruss were sentenced several months after Bell Sr., the losses for which Adams and Burress were held responsible in their respective restitution orders did not include Bell Sr.'s companies, Universal Medical Solutions ("UMS") 1 and UMS 2. (ECF No. 272 at 4.) Kimble has not yet been sentenced; Kimble failed to appear for a status conference in the District of South Carolina and a bench warrant has been issued for his arrest.

Bell Sr. opposes the Government's motion, contending that the "request … prejudices Bell's case and any future request Bell may make in requesting the restitution be corrected (he is not making that case now, though)." (ECF No. 280 at 5.) Bell Sr. also requests the Court issue an order providing Bell Sr. with a "full accounting" of how much he owes and how the money he has paid has been applied to his restitution order. *Id*. at 8.

A "district court retain[s] the power to enforce the order of restitution…." *United States v. Carter*, 742 F.3d 440, 445 (9th Cir. 2014) (citations omitted). Similarly, a "district court ha[s] the power to clarify the disputed balance owing" and "the power to account for the original amount due, and to calculate credits, payments, and the balance owing, if any." *Id*. (citations omitted). A defendant is "entitled to an accounting to determine how much he owe[s]." *Id*.

The Government contends that Bell Sr. "was ordered to pay restitution to CMS for losses related to billing submitted to Medicare by UMS 1 and UMS 2" but "Burruss and Adams were not ordered to pay restitution for these losses." (ECF No. 272 at 4.) As support, the Government cites to the Plea Agreements signed by Burruss and Adams. *Id*. at 3. However, Burruss' and Adams' Plea Agreements and Orders of Restitution do not contain an itemized list of the companies that submitted the bills to Medicare which are the sources of Burruss' and Adams' respective Orders of Restitution. (*See United States v. Adams et al.*, S.D. Cal. Case No. 20cr2980-WQH, ECF Nos. 31-1 ("SDCA Addendum" to Burruss' Plea Agreement), 32-1 ("SDCA Addendum" to Adams' Plea Agreement); *see also id*., ECF Nos. 97 (Burruss' Amended Order of Restitution), 121 (Adams' Order of Restitution).) While the Plea Agreements contain numerous allegations related to the "Ever Prime DME

Companies"—which apparently did not involve Bell Sr.—the enumerated overt acts listed in Adams' and Burruss' respective plea agreements involve Adams and Burruss investing in the company created by Bell Sr. and his son "in exchange for a 50% share of the revenue of the new company." *Id.*, ECF Nos. 31-1 at 7, 32-1 at 7. The Government's Motion to Clarify Restitution Order contains no evidence specifying the companies which created the losses at issue in Adams' and Burruss' respective Orders of Restitution. Accordingly, based upon the current record, the Motion to Clarify Restitution Order is denied.

In his opposition to the Motion to Clarify Restitution Order, Bell Sr. requests an accounting of how much he owes and how the money he has paid has been applied to his restitution order. (*See* ECF No. 280 at 8.) Bell Sr. is entitled to such an accounting. *See Carter*, 742 F.3d at 445. Accordingly, the Court orders the Government to send Bell Sr. "an accounting to determine how much he owe[s]" pursuant to the Amended Judgment. *Id.*

### III. Conclusion

IT IS HEREBY ORDERED that the Motion for Leave of Court to Respond to Government's Reply to Defendant's Motion to Open and Strike Order (ECF No. 281) is granted, and the Motion to Open and Strike Order (ECF No. 266) and Motion to Release $15,000 Bond to Tamara Bell (ECF No. 270) are denied.

IT IS FURTHER ORDERED that the Motion to Clarify Restitution Order (ECF No. 272) is denied and the Motion to Object to Government's Request to Modify Restitution Order (ECF No. 280) is granted. No later than 21 days after this Order is filed, the Government shall send Bell Sr. an accounting showing how much he owes pursuant to the Amended Judgment.

Dated: January 21, 2025

Hon. William Q. Hayes
United States District Court